IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| DAVID W. LAMONT, | ) | |
| | ) | |
| Petitioner, | ) | Case No. CV 04-544-N-LMB |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM DECISION |
| COMMISSIONER, SOCIAL SECURITY | ) | AND ORDER |
| ADMINISTRATION, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Currently pending before the Court is David W. Lamont's Civil Complaint (Docket No. 1) seeking review of the final decision of the Commissioner of the Social Security Administration denying his applications for Title II Social Security disability benefits and Title XVI Supplemental Security Income benefits.  This action is brought pursuant to 42 U.S.C. § 405(g).

Having carefully reviewed the record, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## I.

### ADMINISTRATIVE PROCEEDINGS

On February 1, 2002, David W. Lamont ("Petitioner" or "Claimant") applied for disability insurance benefits under Title II and for supplemental security income benefits under Title XVI of the Social Security Act.  (AR 17).  Petitioner alleged disability beginning June 1, 2000 as a result of shoulder injuries and a crushed left hand.  (AR 17, 78).  Petitioner's

MEMORANDUM DECISION AND ORDER - 1

applications were denied initially and again after reconsideration.  (AR 33, 42, 224, 231).

Petitioner filed a timely request for a hearing before an Administrative Law Judge ("ALJ").  (AR

49-50).

ALJ Paul L. Gaughen held a hearing on October 20, 2003 at which time Petitioner,

represented by counsel, appeared and testified.  (AR 240-97).  Deborah LaPoint, a vocational

expert, and lay witnesses, Judy Jensen and Gene Paschke, also testified.  On March 8, 2004, the

ALJ issued a decision denying Petitioner's claim because he found Petitioner retains the residual

functional capacity to perform work activities at the medium level of exertion, subject to certain

restrictions.  (AR 17-24).  Therefore, the ALJ determined Petitioner is not disabled.  (AR 21, 22).

Petitioner requested the Appeals Council review the ALJ's decision.  (AR 11-13).  The

Appeals Council denied Petitioner's request on October 6, 2004, making the ALJ's decision the

final decision of the Commissioner of Social Security.  (AR 5-8).

Having exhausted his administrative remedies, Petitioner timely filed the present action.

Petitioner asserts that his severe impairments preclude his return to his past relevant work and

also preclude his return to any other work which exists in sufficient numbers in the national

economy since his alleged disability onset date of June 1, 2000.  *Petitioner's Brief in Support of

Petition for Review*, p. 2 (Docket No. 15).  Petitioner requests that the ALJ's decision be

reversed.

MEMORANDUM DECISION AND ORDER - 2

## II.

## BACKGROUND

At the time of the hearing before the ALJ, Petitioner was fifty years of age with a high school equivalent (GED) education.  (AR 246-47).  He has past work experience as a truck driver, glass polisher, and forklift operator.  (AR 17).

## III.

## STANDARDS OF LAW

It is undisputed that the burden of proof rests upon Petitioner to establish an entitlement to disability benefits.  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  In evaluating the evidence at an administrative hearing, the ALJ must follow a five-part sequential process.  20 C.F.R. §§ 401.1520, 416.920 (2005).  The second part of that process involves a determination regarding whether the claimant has a "severe impairment."  20 C.F.R. § 416.905(a).  If no "severe" impairment is found, the claimant will be found not to be disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).

To be upheld, the Commissioner's decision must be supported by substantial evidence and be based on proper legal standards.  42 U.S.C. § 405(g); *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).  Findings of the ALJ as to any fact, if supported by substantial evidence, are conclusive.  42 U.S.C. § 405(g); *Vidal v. Harris*, 637 F.2d 710, 712 (9th Cir. 1981).  In other words, if there is substantial evidence to support the ALJ's decision, it must be upheld, even when there is

MEMORANDUM DECISION AND ORDER - 3

conflicting evidence.  *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir.

1979).

 Substantial evidence is defined as such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971);

*Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human

Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).  The standard requires more than a scintilla but less

than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975);

*Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or

considerable amount of evidence . . . ."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

 With respect to questions of fact, the role of the Court is to review the record as a whole

to determine whether it contains evidence that would allow a reasonable mind to accept the

conclusions of the ALJ.  *See Richardson*, 402 U.S. at 401; *Matney*, 981 F.2d at 1019.  The ALJ

is responsible for determining credibility and resolving conflicts in medical testimony, *Allen v.

Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel. Vincent v.

Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984), and drawing inferences logically flowing from

the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).  Where the evidence is

susceptible to more than one rational interpretation in a disability proceeding, the reviewing

court may not substitute its judgment or interpretation of the record for that of the ALJ.  *Flaten*,

44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

 With respect to questions of law, the ALJ's decision must be based on proper legal

standards and will be reversed for legal error.  *See Matney*, 981 F.2d at 1019.  The ALJ's

construction of the Social Security Act is entitled to deference if it has a reasonable basis in law.

MEMORANDUM DECISION AND ORDER - 4

*See id.*  However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute."  *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).  Reviewing federal courts must bear in mind that the Social Security Act is remedial and should be construed liberally and "not so as to withhold benefits in marginal cases."  *Id.* at 1095 (citation omitted).

The issues presented in the instant appeal are (1) whether the Appeals Council's finding that Petitioner was not disabled is supported by substantial evidence and (2) whether that finding is based on application of proper legal standards.

## IV.

## DISCUSSION

In evaluating the evidence presented at an administration hearing, the ALJ must follow a sequential process in determining whether a person is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920 (2005).

### A.   Sequential Process

The first step in the sequential process requires the ALJ to determine whether the claimant is engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(I).  If the answer is in the affirmative, disability benefits are denied.  20 C.F.R. § 404.1520(b).  In the instant action, the ALJ found that Petitioner has not engaged in substantial gainful activity since the alleged onset of disability.  (AR 23).

The second step requires the ALJ to determine whether the claimant has a medically severe impairment or combination of impairments.  20 C.F.R. § 404.1520(a)(4)(ii).  The ALJ found that Petitioner's history of a crush injury to the left hand with probable ulnar motor nerve

MEMORANDUM DECISION AND ORDER - 5

abnormalities and residual claw hand problems, and left shoulder pain with possible

degenerative joint disease are considered severe based on the requirements in the Regulations 20

C.F.R. §§ 404.1520(c) and 416.920(b).  (AR 23).

The third step in the evaluation process requires the ALJ to determine whether the

claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P,

Appendix 1.  20 C.F.R. § 404.1520(a)(4)(iii).  In this respect, the ALJ concluded that Petitioner's

medically determinable impairments do not meet or medically equal one of the listed

impairments in Appendix 1, Subpart P, Regulation No. 4.  (AR 23).

The fourth step of the evaluation process requires the ALJ to determine whether the

claimant's residual functional capacity is sufficient for the claimant to perform past relevant

work.  20 C.F.R. § 404.1520(a)(4)(iv).  In this respect, the ALJ concluded that Petitioner is

unable to perform any of his past relevant work.  (AR 23).

In the fifth and final step, the burden shifts to the Commissioner to show that Petitioner

retained the ability to do alternate work and to demonstrate that such alternate work exists in

significant numbers in the national economy.  20 C.F.R. §§404.1520(a)(4)(v), 404.1520(f);

*Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).  The ALJ found that Petitioner has the

residual functional capacity to perform work activities at the medium level of exertion subject to

less than occasionally lifting up to 40 pounds with the right hand and 20 to 25 pounds

occasionally.  He cannot use the left hand for fingering, grasping tasks.  That hand can be used to

stabilize a load or weight held by the right hand.  Petitioner can occasionally bend or stoop; less

than occasionally crawl; and perform no work in excessively cold temperatures.  (AR 23).

MEMORANDUM DECISION AND ORDER - 6

The ALJ found that although Petitioner's exertional limitations do not allow him to perform the full range of medium work, using Medical-Vocational Rule 203.17 or 203.29 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform.  Examples of such jobs include work as a school bus monitor, usher, and case aide for the retarded.  (AR 24).

**B.**    **Analysis**

Petitioner disagrees with the ALJ's finding at Step Five of the sequential process that Petitioner is capable of performing a significant range of medium work and that there are a significant number of jobs in the national economy he could perform.  *Petitioner's Brief in Support of Petition for Review*, pp. 9-10, 13 (Docket No. 18).  As part of this challenge, Petitioner disputes the propriety of the ALJ's finding that Petitioner's testimony is not entirely credible, which affected the ALJ's formulation of the hypothetical posed to the vocational expert.  Petitioner claims that the ALJ did not provide clear and convincing reasons or substantial evidence to support his finding that Petitioner's claim of limitations, including pain, are not credible.  *Id.* at pp. 14, 17.  Concomitantly, Petitioner argues that the hypothetical posed to the vocational expert should have included Petitioner's complaints for constant pain in his shoulder, arm, and hand.  *Id.* at p. 18.  In other words, Petitioner argues that the ALJ's findings and conclusions are not supported by substantial evidence nor based on application of proper legal standards.

**1.**    **Credibility**

The ALJ found Petitioner's allegations regarding his limitations to be not totally credible. (AR 20, 23).  For an ALJ to reject a claimant's subjective complaints, he must provide "specific,

cogent reasons for the disbelief." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (quoting *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990)).  In other words, "the ALJ may reject the claimant's testimony regarding the severity of [his] symptoms only if he makes specific findings stating clear and convincing reasons for doing so," and he "must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).  Generally, in determining whether the claimant's subjective testimony regarding the severity of his symptoms is credible, the ALJ may consider inconsistencies either in the claimant's testimony or between the claimant's testimony and his conduct, the claimant's daily activities, the claimant's work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains.  *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 791 (9th Cir. 1997).

A key finding relied on by the ALJ in making his credibility determination—that Petitioner claimed a restricted capacity to walk—is not supported by *any* evidence in the record.  The ALJ cited three primary reasons to support his credibility determination, and each of these reasons rests to some degree on the ALJ's belief that Petitioner had testified that he could "walk only 5 minutes at a time."  (AR 20).  Petitioner actually testified that he walks "five *miles*" at one stretch and that he tries to go for a walk every day.  (AR 268) (emphasis added).  Accordingly, to the extent the ALJ's credibility determination rests on his finding that Petitioner's claimed restriction on walking was inconsistent with other evidence in the record, the ALJ's credibility determination is not supported by clear and convincing reasons.

In finding Petitioner not entirely credible, the ALJ first was influenced by Petitioner's self-reported activities of daily living.  *See* Daily Activities Questionnaire, Exhibit 7E (AR 115-

120).  Petitioner's Questionnaire reported that he required no assistance with personal care (AR 116), performed all household chores (AR 116), drove a car or walked when he went out (AR 117), did his own grocery shopping, and listed fishing, hunting, and golfing as outdoor activities that he enjoys participating in (AR 118).  The ALJ stated that these activities "would appear to be inconsistent with Petitioner's claims of limitation regarding use of his hands and restricted capacity to walk and/or sit."  (AR 20).  As explained above, to the extent these activities may be inconsistent with a "restricted capacity to walk," they do not undermine Petitioner's credibility because he never claimed a limitation on walking.

Additionally, with regard to sitting, Petitioner testified that he "can sit all right," but sometimes his arm goes to sleep.  (AR 268).  The Court can discern no reason why this claimed limitation would be inconsistent with Petitioner's reported daily activities.  The only activity that might require an extended period of sitting is driving, and even then Petitioner may be able to take breaks at sufficient intervals to keep his arm from going to sleep.  The only possible inconsistency then is between Petitioner's daily activities and his claimed limitation in use of his hands.  Although the ALJ did not mention it, Petitioner qualified his ability to do household chores by explaining on his Questionnaire that he requires assistance if the chores involve heavy lifting, (AR 116), and testifying at the hearing that he tries to avoid lifting in his every day life activities (AR 267).  These statements are consistent with Petitioner's claimed hand problems.

While a limitation on Petitioner's use of his hands may be inconsistent with engaging in activities such as fishing, hunting, and golfing, nothing on the Questionnaire indicates how often Petitioner actually engages in these activities.  *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (noting, with respect to daily activities, the Ninth Circuit has held

MEMORANDUM DECISION AND ORDER - 9

that if a claimant "is able to spend a *substantial part* of [his] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations").  In fact, Petitioner explained on his Questionnaire that his activities have changed since his condition began because he "can't lift much with [his] left hand or shoulder."  (AR 118).  In short, the ALJ did not provide clear and convincing reasons for his determination that Petitioner's reported daily living activities undermine his credibility.

As the Ninth Circuit Court of Appeals has recognized, claimants "should not be penalized for attempting to lead normal lives in the face of their limitations."  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  This is because the ability to do limited household chores, interspersed with rest, does not demonstrate the ability to work eight hours a day, five days a week, where it might be impossible to periodically rest.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "Consequently, the ALJ must link the claimant's daily activities to the ability to perform full-time work when assessing residual functional capacity."  *Id.*  Although the ALJ in this instant action noted perceived inconsistencies, he did not explain how the activities are inconsistent with engaging in full time work, especially when Petitioner has claimed a limitation based on pain. *See Vertigan v. Halter*, 260 F.3d 1044, 1049-51 (9th Cir. 2001) (determining that activities such as walking in the mall and swimming are not necessarily transferable to the work setting with regard to the impact of pain because a patient may do these activities *despite* pain for therapeutic reasons, but that does not mean petitioner could concentrate on work despite the pain or could engage in similar activity for a longer period given the pain involved).

MEMORANDUM DECISION AND ORDER - 10

The ALJ also rested his credibility determination on his finding that "many portions" of Petitioner's Daily Activities Questionnaire vary from his hearing testimony. (AR 20). The ALJ, however, pointed to just one variance and the Court has not located other instances in which Petitioner's testimony varied substantially from his Questionnaire. As the ALJ recognized, Petitioner testified at the hearing that he sleeps just five to six hours per night (AR 264), but reported in his Questionnaire that he sleeps six to eight hours a night (AR 115). Initially, the Court notes that Petitioner completed the Questionnaire on May 21, 2002 and provided testimony to the ALJ almost a year and one-half later, on October 20, 2003. The mere fact that Petitioner's sleeping patterns may have changed during this time period does not amount to substantial evidence supporting a negative credibility finding.

A second possible variance is that Petitioner reported in his Questionnaire that he chopped his own wood (AR 117), but testified at the hearing that he used pellets and then a furnace to heat his home (AR 267). This does not amount to a variance though because Petitioner explained at the hearing that he had tried to avoid any lifting in his everyday life and, for that reason, he went from cutting wood to a pellet stove. (AR 267). However, he later had to switch to a furnace to heat his home because he could not lift the 50 pound pellet bags. (AR 267). Accordingly, there are no clear and convincing reasons to support the ALJ's finding that Petitioner's testimony varies from his reported daily activities to an extent that warrants a negative credibility finding.

As a second reason to find the Petitioner not entirely credible, the ALJ relied on the fact that Petitioner performed work in June of 2001, earning $1200. (AR 21). Petitioner reported in his disability application that he worked part time in the summer of 2001, from June 4 to June

30, 2001.  (AR 78).  Petitioner testified at the hearing that the work involved shoveling, cutting

down trees, and then carrying the trees.  (AR 255).  The ALJ stated that he "considered that one

as limited as the claimant's testimony would indicate regarding the use of his two hands *or in*

*being on his feet* would appear to be unemployable for even one day in shoveling-type labor

work, yet per his testimony, he attempted such work in 2001."  (AR 21) (emphasis added).

Again, the Court notes Petitioner has claimed no limitation in being on his feet.  Additionally,

Petitioner explained the difficulty he had with his hands when attempting this work.  He noted in

his application that his hand and shoulder started hurting and his hand would turn colors and the

fingers sometimes turn white.  (AR 78).  He testified at the hearing that the work came to an end

because his arm and shoulders and his hand would turn white.  (AR 255).  He also explained that

his "hands just wouldn't do it."  (AR 255).  Because Petitioner claimed no limitation in being on

his feet, and because he explained that his attempt to work was unsuccessful because of his hand

and shoulder problems, the Court finds this failed attempt to work does not provide a clear and

convincing reason to support the ALJ's credibility determination.

      The final reason the ALJ stated in finding Petitioner not totally credible is that "there is

no underlying medically determinable impairment" to support Petitioner's claim of "limitations

on the hands; of limitations in walking and sitting; or of having limited range of motion on the

damaged left shoulder."  (AR 20).  To the extent this rationale rests on the ALJ's view that there

are no medical records to support an impairment that would limit Petitioner's walking, it is

unpersuasive.  Because Petitioner claimed no limitation in walking, it would not be expected that

the medical records would support such a limitation.

MEMORANDUM DECISION AND ORDER - 12

With regard to the sitting limitation, the only limitation testified to by Petitioner is that although he "can sit all right," sometimes his arm goes to sleep.  (AR 268).  It appears that Petitioner was referring to his left arm.  Accordingly, the "sitting" limitation referred to by the ALJ is really the same as the claimed limitation on the use of Petitioner's left hand and the Court will consider these issues together.

There is substantial evidence in the record documenting Petitioner's left hand injury. (AR 180).  Dr. Carraher, a physician whose report the ALJ found "persuasive," (AR 21), opined that Petitioner "is unable to use his left hand for much activity," and "is unable to manipulate objects with the left hand."  (AR 162).  Dr. Carraher found a partial claw deformity of the left hand with finger flexion deformities, left hand atrophy of the hypothenar and the interosseous muscles, and a grip strength of only 33 pounds in the left hand.  (AR 162).  Similarly, two state agency consulting physicians reported that Petitioner has abnormalities to left hand and left shoulder pain, (AR 165, 186), found Petitioner "fully credible," and concluded that "[m]edically determinable impairment is established which accounts for [his] symptoms."  (AR 170, 191). The ALJ considered both consultants' reports and "conclude[d] that their opinions were reasonable based on the available medical evidence."  (AR 21).

In contrast, the medical evidence relied on by the ALJ to conclude that there was no underlying medically determinable impairment to Petitioner's hands that would support his claimed limitations is a report by Petitioner at a doctor's visit in February 2002 that his hand had not "changed appreciably" in the last five years.  (AR 21).  Simply because Petitioner's hand problems had not changed does not mean he did not have problems that had continued from the time of his injury through his alleged disability period.  Petitioner's left hand crush injury

MEMORANDUM DECISION AND ORDER - 13

occurred in the late 1970's or early 1980's and after that time Petitioner developed flexion deformities in his fingers.  (AR 179).  Additionally, Petitioner reported at his February 2002 doctor's visit that it is "very hard to carry things."  (AR 180).  Thus, the one notation in the medical record that Petitioner's hand had not changed does not provide a clear and convincing reason to reject Petitioner's claimed left hand limitation considering all the other evidence in the record.

Moreover, other medical evidence supports Petitioner's claim of left arm problems.  The ALJ relied on an office visit on December 28, 1995, at which Petitioner "denie[d] loss of use or mobility" in his left arm, to discredit his claims of left arm/shoulder/hand problems.  (AR 20-21, citing AR 150).  The Court notes that this visit occurred over six years before the date on which Petitioner claims his disability began.  Additionally, at that same visit, Petitioner informed the physician that "the pain and tingling [in his left shoulder/arm] has worsened over the past year or so."  (AR 150).  Significantly, during the time just before and during Petitioner's alleged period of disability, he sought medical care for left shoulder pain and/or complained of shoulder pain. (*See, e.g.,* AR 134, June 7, 1999; AR 133, December 13, 1999; AR 132, January 3, 2001; AR 130-31, January 8, 2001; AR 180, January 24, 2002; AR 178-49, February 1, 2002; AR 173, March 25, 2002).  Petitioner also reported to physicians on several occasions that his fingers on his left hand turn white and go numb.  (AR 132, 134-35, 138, 176, 178).  Moreover, the ALJ determined earlier in the sequential process that "[t]he medical evidence in this case reflects that [Petitioner] suffered a crush injury to his left hand in 1978 and experiences left shoulder pain."

The ALJ also explained that he was influenced by "clinical reports which specifically state [Petitioner] had a full range of motion of the left shoulder, i.e., full range of motion and

MEMORANDUM DECISION AND ORDER - 14

strength in January 2001."  (AR 20, citing AR 131).  Petitioner testified at the hearing that he

does not have "full range of motion" in the left shoulder.  (AR 259).  The report relied on by the

ALJ, however, is dated six months before Petitioner claimed disability.  Even though a later

report indicates that Petitioner "has full range of motion of the left shoulder," it also states that

Petitioner "has pain and stiffness at the ends of motion."  (AR 162).  Regardless of the mobility

of the shoulder, the ALJ provided no specific reason for disbelieving Petitioner's claimed

limitation of pain in the shoulder despite the ALJ's finding at step two that Petitioner has "left

shoulder pain with possible degenerative joint disease."  (AR 19).  The possible "degenerative

joint disease" in the left shoulder was noted by Dr. Carraher and would be a medically

determinable impairment that could support Petitioner's claimed limitation of pain in using his

shoulder.

       If a claimant produces evidence that he suffers from an ailment that could cause pain,

"the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by

offering specific, clear and convincing reasons for doing so."  *Smolen v. Chater,* 80 F.3d 1273,

1281 (9th Cir. 1996).  Additionally, "[i]n order to disbelieve a claim of excess pain, an ALJ must

make specific findings justifying that decision" and "[t]hose findings must enable the ALJ to

'convincingly justify his rejection' of the claimant's excess pain testimony."  *Fair v. Bowen*, 885

F.2d 597, 602 (9th Cir. 1989) (citations omitted).  The record demonstrates that Petitioner

consistently sought pain medications and renewed his prescriptions.  (AR 185, 194-210, 219).

Petitioner testified that he was "in pain constantly" in his left "shoulder and in [his] fingers" (AR

257, 269), that his left hand "hurts constantly" (AR 259), that the pain wakes him up at night

(AR 261), and that he does not know what he would do without the pain killers (AR 270, 275).

MEMORANDUM DECISION AND ORDER - 15

The ALJ did not provide clear and convincing reasons to reject this evidence.  *See Reddick*, 157

F.3d at 722 ("Unless there is affirmative evidence showing that the claimant is malingering, the

Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing.").

Instead, "[t]here is considerable evidence in the record that detracts from the ALJ's

conclusions."  *Id.* at 723.  And, although the Court gives deference to the ALJ in determination

of a claimant's credibility, an ALJ cannot seek to justify negative credibility findings by

"ignoring competent evidence in the record that suggests an opposite result."  *Gallant v. Heckler*,

753 F.2d 1450, 1456 (9th Cir. 1984).

      The one complaint of Petitioner that is not supported by a medically determinable

impairment is his claimed limitation on the use of his right hand.  Petitioner testified that he had

experienced swelling in his right fingers and hand beginning in the last year before the hearing,

i.e., from about October 2002 to October 2003 (AR 258, 260), and that his joints and knuckles

on the right hand would sometimes swell. (AR 267).  The ALJ noted that Petitioner had not

reported to clinicians that he had any problems with his right hand or arm.  (AR 21).  Petitioner

did actually seek treatment on October 8, 2003 for joint pain and stiffness in his right hand.  (AR

217).  However, the Court agrees with the ALJ that there is no medically determinable

impairment in his right hand to support a limitation in its use.  In fact, when Dr. Carraher

examined Petitioner in March of 2002, he found that Petitioner had a grip strength of 106 pounds

in his right hand, but only 33 pounds in his left.  (AR 162).  Additionally, Petitioner testified to

no new activity or change in his life that might account for the problems with his right hand.

(AR 274).  Accordingly, to the extent the ALJ found Petitioner's claimed limitation in his right

hand to be unsupported by a medical impairment, the Court finds clear and convincing reasons to

MEMORANDUM DECISION AND ORDER - 16

support this finding.  However, even discounting Petitioner's claim of a right hand impairment,

the ALJ has not sufficiently supported his finding of no credibility with regard to Petitioner's left

hand and shoulder pain and limitations, and therefore the case must be remanded for

reconsideration of Petitioner's credibility on these issues.  On remand, the ALJ should also

reconsider the lay witness's testimony because his only reason for discounting it was that it

corroborated Petitioner's "subjective complaints which are not supported by objective medical

findings."  (AR 20).

> **2.      Hypothetical Posed to the Vocational Expert**

There is a second reason to remand this case.  In making his assessment of Petitioner's

RFC, the ALJ must consider all of Petitioner's symptoms, including pain.  *See* 20 CFR §§

404.1529, 416.929.  Although the ALJ found that Petitioner's medically determinable

impairments include "left shoulder pain with possible degenerative joint disease,"he did not

include Petitioner's pain limitations in the hypothetical posed to the vocational expert.  (AR 23,

278-79).

In determining residual functional capacity, the ALJ must consider whether the aggregate

of Petitioner's physical impairments so incapacitate him that he is unable to perform available

work.  20 C.F.R. § 404.1523; *Macri v. Chater*, 93 F.3d 540, 545 (9th Cir. 1996).  To make that

determination the ALJ may elicit testimony from a vocational expert, but "the hypothetical

[posed to the vocational expert] must consider all of the claimant's limitations."  *Andrews v.

Shalala,* 53 F.3d 1035, 1044 (9th Cir. 1995).

Here, the vocational expert's testimony, upon which the ALJ relied in his opinion,

responded to a hypothetical posed by the ALJ that did not include Petitioner's claim of pain, a

MEMORANDUM DECISION AND ORDER - 17

claim that, for reasons explained above, the ALJ did not properly discredit.  While the ALJ need not include all claimed impairments in his hypotheticals, he must make specific findings explaining his rationale for disbelieving any of the claimant's subjective complaints not included in the hypothetical.  *Copeland v. Bowen*, 861 F.2d 536, 540 (9th Cir. 1988).  The hypothetical here was inadequate because the ALJ failed to make specific findings supported by the record to justify his decision to discredit Petitioner's subjective complaints.  *See Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).

## V.

### CONCLUSION

For the reasons explained above, the Court finds that the evidence upon which the ALJ relied cannot reasonably and rationally be relied upon to support his conclusion.  The Court also concludes that the Commissioner's determination that Petitioner is not disabled within the meaning of the Social Security Act is not supported by substantial evidence in the record.  In making this decision, the Court has considered that "[t]he Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits."  *Fair*, 885 F.2d at 603.

Accordingly, the Court will remand this case to allow the ALJ to re-evaluate Petitioner's credibility, consider Petitioner's pain limitations, and pose a hypothetical reflecting all of Petitioner's limitations.  *Connett v. Barnhart,* 340 F.3d 871, 876 (9th Cir. 2003) (holding that the court has flexibility to remand if substantial questions remain as to a claimant's credibility and other issues must be resolved before a determination of disability can be made); *see also Byrnes v. Shalala,* 60 F.3d 639, 642 (9th Cir. 1995) ("We therefore remand this case to the ALJ for further findings evaluating the credibility of [the claimant's] subjective complaints. . . ").

Because the Court is remanding this case, it need not address whether the ALJ erred in determining that there is sufficient alternate work for Petitioner in the national economy.

**VI**.

**ORDER**

Based on the foregoing, Petitioner's Civil Complaint and request for review (Docket No. 1) is GRANTED.  The Commissioner's decision that Petitioner is not disabled within the meaning of the Social Security Act is reversed and this matter is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum Decision and Order.  *See Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991).



DATED:  **March 29, 2006**.

Honorable Larry M. Boyle
Chief U. S. Magistrate Judge

MEMORANDUM DECISION AND ORDER - 19